IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: NU RIDE INC., *et al.*, | ) ) | Chapter 11<br>Case No. 23-10831 (MFW) |
| Reorganized Debtors. | ) ) ) | (Jointly Administered) |
| RAHUL SINGH, PRAVESH SINGH, and RENU SINGH, | ) ) ) ) ) | |
| Appellants, | ) ) ) | |
| v. | ) ) | C.A. No. 24-1318 (MN) |
| NU RIDE INC., *et al.*, | ) ) ) | |
| Appellees. | ) | |

**MEMORANDUM OPINION**

Rahul Singh, Pravesh Singh, and Renu Singh—*Pro se* appellants.

David M. Klauder, Ryan M. Ernst, BIELLI & KLAUDER, LLC, Wilmington, DE—Counsel to appellees, Nu Ride Inc., *et al.*, and co-counsel to the Claims Ombudsman.

September 12, 2025
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

This dispute arises in the chapter 11 cases of debtor Nu Ride, Inc. f/k/a Lordstown Motors Corp. ("Lordstown Motors") and Lordstown EV Corporation ("LEVC") (together, "the Debtors"). *Pro se* appellants Rahul Singh, Pravesh Singh, and Renu Singh (together, "the Appellants") are equity holders who own common stock interests in the Debtors. During the chapter 11 cases, Appellants filed proofs of claim which attached brokerage statements and asserted claims against the Debtors representing the diminution in value of Appellants' equity interests ("the Claims"). A later confirmed chapter 11 plan provided that equity interests would be retained by existing equity holders such that equity holders of the Debtors are now equity holders of the reorganized Debtors ("the Reorganized Debtors"), also referred to in the briefing as the "Post-Effective Date Debtors."

The Reorganized Debtors, together with a claims ombudsman appointed pursuant to their confirmed chapter 11 plan, later objected to the Claims, asserting that Appellants' equity interests do not constitute "claims" against the Reorganized Debtors within the meaning of 11 U.S.C. § 101(5), and thus must be disallowed. Because holders of common stock interests retained their rights as stockholders in the Reorganized Debtors under the confirmed plan, the Reorganized Debtors asserted, Appellants' equity interests were not impacted or otherwise impaired by disallowance of the Claims. Appellants disagreed, arguing that fraud, crime, and conspiracy among the Debtors' officers and directors had reduced the value of their investments, and further arguing that their Claims were supplemented by a separate, previously filed motion. The Reorganized Debtors responded that the Claims did not assert (nor did Appellant provide any support for) any claims for damages independent of Appellants' equity ownership, and therefore Appellants were entitled to receive the treatment afforded to them under the confirmed plan. The

Bankruptcy Court agreed, sustained the claim objection, and disallowed the Claims by order dated November 26, 2024 (Bankr. D.I. 1432)[1] ("the Order").

Appellants raise several arguments on appeal including, primarily, that their assertions of fraud somehow altered the nature of their asserted Claims. Appellants ultimately contend that their equity interests should be accorded a priority that is at odds with the Bankruptcy Code and the terms of the confirmed plan. Accordingly, the Order will be affirmed.

## I. BACKGROUND

### A. The Debtors and the Chapter 11 Plan

In 2018, and prior to the bankruptcy, the Debtors were formed for the purpose of developing, engineering, launching, and selling all-electric vehicles to commercial fleet customers. After some initial setbacks, the Debtors decided to forge a strategic partnership with global electronics manufacturer Hon Hai Precision Industry Co., Ltd. (a/k/a Hon Hai Technology Group), also doing business as "Foxconn," and the parties entered into a series of agreements from November 2021 to November 2022. The strategic partnership failed.

On June 27, 2023 ("the Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the same date, the Debtors filed an adversary proceeding against Hon Hai, Foxconn EV Technology, Inc., Foxconn Ventures Pte. Ltd., Foxconn (Far East) Limited, and Foxconn EV System LLC (together, "the Defendants"). *See Lordstown Motors Corp. v. Hon Hai Precision Industry Co. Ltd., et al.*, Adv. No. 23-50414 (MFW) (Bankr. D. Del.) ("the Adversary Proceeding"). The complaint asserts several causes of action against various groups of Defendants but can be summarized generally as alleging that the Defendants

---

[1] The docket of the chapter 11 cases, captioned *In re Nu Ride Inc.*, No. 23-10831 (MFW) (Bankr. D. Del.) is cited herein as "Bankr. D.I. __." The appendix (D.I. 8-1) filed in support of Appellants' opening brief is cited herein as "AA __," and the appendix (D.I. 10) filed in support of Appellees' answering brief is cited herein as "APP. __."

purposely breached the agreements for their own strategic purposes, thereby devastating the Debtors' business. The effect on equity holders, like Appellants, was also devastating. As the Bankruptcy Court observed, although the Debtors at one point had been valued at $5.3 billion, the subsequent chapter 11 sale of their remaining assets generated only $10 million. *See In re Nu Ride Inc.*, 2024 WL 4376130 at *2 (Bankr. D. Del. Oct. 1, 2024).

On March 6, 2 024, the Bankruptcy Court entered an order (Bankr. D.I. 1069) ("the Confirmation Order"), confirming the Debtors' chapter 11 plan (Bankr. D.I. 1066) ("the Plan"). The Plan became effective on March 14, 2024 (Bankr. D.I. 1096) ("the Effective Date"). Pursuant to the Confirmation Order and Plan, the Reorganized Debtors emerged as Nu Ride, Inc. (APP. 000284). Also pursuant to the Confirmation Order and Plan, on the Effective Date, Alan D. Halperin was appointed as claims ombudsman ("the Claims Ombudsman") in the chapter 11 cases.[2] (APP. 000390; APP. 000307).

The Plan details the treatment for the various classes of claimants and interest holders. Relevant here, the Plan provides that Common Stock Interests are retained by existing equity holders, such that equity holders of the Debtors are now equity holders of the Reorganized Debtors. (APP. 000299). Thus, under the Plan, equity holders, such as Appellants, were not required to file a proof of claim to preserve their rights as equity holders. (APP. 000326).

Also pursuant to the Plan, the Reorganized Debtors retained certain "Causes of Action," which include the Adversary Proceeding as well as all "Causes of Action" against "Former

---

[2] Pursuant to the Plan, the Claims Ombudsman has the right, authority, and responsibility to object to, seek to subordinate, compromise or settle any and all General Unsecured Claims, including by filing and prosecuting objections to General Unsecured Claims, subject to the limitations set forth in the Plan. (APP. 000391-000393; APP. 000307-000308). Additionally, the Claims Ombudsman has the right to assert any and all rights and defenses that the applicable Debtors had with respect to any General Unsecured Claim immediately before the Effective Date. (*Id.*).

3

Directors and Officers" of the Debtors—*i.e.*, those persons who served as officers and directors prior to the Effective Date—which would include any causes of action based on the allegations of fraud cited by Appellants. (APP. 000272 ¶ 20; APP. 000276 ¶ 65; APP. 000287 ¶ 160(iv); APP. 000313-000314). As described in the disclosure statement accompanying the Plan, several lawsuits in various jurisdictions against the former directors and officers are pending. (*See* APP. 000046-000050). In accordance with the Plan, those recoveries will flow to the Reorganized Debtors and, thus, inure to the benefit of all of the Debtors' equity holders, including Appellants.

B.  **The Bar Date and the Claim Objection**

On August 24, 2023, the Bankruptcy Court entered an order (Bankr. D.I. 319) ("the Bar Date Order") setting the deadline to file proofs of claim against the Debtors in the chapter 11 cases. The Bar Date Order provides:

> Any person or entity holding an equity security or other ownership interest in the Debtors (an "**Interest Holder**") is not required to file a proof of interest on or before the applicable Bar Date; *provided*, *however*, that an Interest Holder (or any other person or entity) that wishes to assert claims against the Debtors that arise out of or relate to the ownership or purchase of an equity security or other ownership interest, including, but not limited to, a claim for damages or rescission based on the purchase or sale of such equity security or other ownership interest, must file a Proof of Claim on or before the applicable Bar Date; *provided*, *further* that an Interest Holder (or any other person or entity) that is included in, or represented by a Representative Action and/or a Representative Claim against the Debtors, must properly file timely an individual Proof of Claim on or before the applicable Bar Date.

(APP. 000024 ¶ 15). Appellants each filed Claims representing the diminution in value of their equity interest in the Debtors:

> Claim 8 filed by Rahul Singh in the amount of $81,444.72 for "Fidelity Roth 220883833". The support offered with Claim 8 is a screenshot of Mr. Singh's shares of RideQ;

4

> Claim 9 filed by Rahul Singh in the amount of $152,118.81 for "TIAA Brokerage Account # A54-593909." The support offered with Claim 9 is a screenshot of Mr. Singh's shares of RideQ;
>
> Claim 10 filed by Pravesh Singh in the amount of $492,105.43 for "TIAA Brokerage Acct # A54-595615." The support offered with Claim 10 is a screenshot of Mr. Singh's shares of RideQ; and
>
> Claim 11 filed by Renu Singh in the amount of $364,739.60 for "Fidelity account # 227879600." The support offered with Claim 11 is a screenshot of Mr. Singh's shares of RideQ.

(APP. 000001-000016). Attached to each Claim is an addendum purportedly showing the difference between the purchase price paid by each Appellant for their shares in the Debtors, and the price of such shares after the Petition Date. (APP. 000001-000004, APP. 000005-000008, APP. 000009-000012, APP. 000013-000016).

On October 14, 2024, Reorganized Debtors and the Claims Ombudsman (together, "the Appellees") filed an omnibus claim objection (Bankr D.I. 1366) ("the Claim Objection"), objecting to various proofs of claim including the Appellants' Claims as based solely on ownership of equity interests in the Debtors and therefore not "claims" within the meaning of section 101(5) of the Bankruptcy Code.

On November 8, 2024, Appellants filed responses to the Claim Objection (Bankr. D.I. 1404, 1412, 1413 and 1414) (collectively, "the Appellants' Responses"). (APP. 000510-000529). Appellants' Responses raised allegations of fraud against the Debtors' executives and argued that fraud, crime, and conspiracy reduced the value of their investments in the Debtors. Appellants further asserted that their proofs of claim were supplemented by the 2-page *Motion of Rahul Singh for Relief to Defrauded Shareholders* (Bankr. D.I. 494) ("the Singh Motion") filed on September 29, 2023, in which Appellants argued they were defrauded by Foxconn, that the Debtors failed to tell their shareholders of the fraud in a timely manner, and that the Bankruptcy

5

Court should enter an order compelling the Debtors to pay each of Appellant's Claims in full immediately.[3] Appellants' Responses also appear to raise objections to the sale of certain assets of the Debtors pursuant to section 363 of the Bankruptcy Code, which was approved by the Bankruptcy Court after a contested sale hearing on October 18, 2023. (Bankr. D.I. 586).

Appellees filed a reply in support of the claim Objection (Bankr. D.I. 1417) which argued that, notwithstanding Appellants' allegations of fraud or misinformation, disallowance of the Claims was appropriate because the Claims were filed by shareholders based solely on their ownership of equity securities in the Debtors, the only harm alleged stemmed from their equity ownership, and Appellants had failed to put forth any information or documentation to support a claim separate and apart from such ownership. (APP. 000525-000529).

### C. The Order

On November 26, 2024, the Bankruptcy Court held a hearing on the Claim Objection. Appellant Rahul Singh attended the hearing (*see* APP. 000535) but did not offer any additional argument or evidence. On November 26, 2024, the Bankruptcy Court entered the Order disallowing Appellants' Claims in their entirety.

### D. The Appeal

On December 4, 2024, Appellants filed their notice of appeal. (D.I. 1.) On December 12, 2024, Appellants identified several issues on appeal which are summarized below:

1. Did the Bankruptcy Court err in rejecting arguments raised by the Debtors (prior to being reorganized), the Official Committee of Equity Security Holders, and the Official Committee of General Unsecured Creditors that Appellant's claims are subject to subordination?

---

[3] The Singh Motion was denied by the Bankruptcy Court by order dated October 23, 2023. (Bankr. D.I. 601).

      2.      Did the Bankruptcy Court err by disallowing Appellants' claims on the basis of the arguments raised by Appellees that the allegations of fraud raised in Appellant's pleadings did not alter the nature of Appellants' Claims?

      3.      Did the Bankruptcy Court err in not extending the claims bar date upon revelations of fraud that were 'unearthed' in bankruptcy proceedings past the bar date?

      4.      Did the Bankruptcy Court err by disallowing claims based on common stock on the basis that shareholders cannot file claims under any and all circumstances?

(APP. 000616-000621). The Court agrees that Issues 1 and 3 are not properly before this Court, as they were raised in separate pleadings and parties that were not before the Bankruptcy Court with respect to the Claim Objection. Issues 2 and 4 as stated by Appellants misconstrue the Bankruptcy Court's holding. The Court agrees that the sole issue is whether the Bankruptcy Court erred in holding that Appellants' Claims should be disallowed as solely based on Appellants' ownership of equity securities in the Debtors. The appeal is fully briefed. (D.I. 8, 9, 11). Although Appellants reference oral argument in their briefing,[4] the Court ultimately did not hear oral argument because the dispositive issue or issues have been authoritatively decided.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). "An order allowing or disallowing a claim is a final, appealable order." *In re Prosser*, 388 F. App'x 101, 102 n.1 (3d Cir. 2010) (quoting *Orsini Santos v. Mender*, 349 B.R. 762, 768 (1st Cir. B.A.P. 2006)). This Court "review[s] the bankruptcy court's legal

---

[4]    See D.I. 8 at 8 ("We welcome Oral Argument on this Appeal."); D.I. 11 at 12 (noting only that "[i]f there is Oral Argument, Appellant Rahul Singh would like permission to attend the District Court in person . . .").

determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998).

### III.    ANALYSIS

When asserting a proof of claim against a bankruptcy estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *In re Int'l Match Corp.*, 69 F.2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist). Where a claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity. *In re Allegheny Int'l, Inc.*, 954 F.2d at 173. A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's prima facie validity. *Id*. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. *Id*. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. *Id*. The burden of persuasion is always on the claimant. *Id.*

The Bankruptcy Code defines an "equity security" as (A) share in a corporation, whether or not transferable or denominated "stock", or similar security; (B) interest of a limited partner in a limited partnership; or (C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph. 11 U.S.C. § 101(16). Holders of equity securities, such as shares of stock, do not have "claims" under section 101(5) of the Bankruptcy Code, but rather equity interests. *See In re Insilco Techs., Inc.*, 480 F.3d 212, 218 (3d Cir. 2007) ("[An equity interest] is not a claim at all"); *In re Hedged-Invs. Assocs.*, 84 F.3d 1267, 1272 (10th Cir. 1996) ("Simply put, an equity interest is not a claim against the debtor") (quotations omitted). As such, the Bar Date Order provided that "[a]ny person or entity holding an equity security or other ownership interest in the Debtors (an "Interest

8

Holder") is not required to file a proof of interest on or before the applicable Bar Date." (APP. 000024). Only to the extent that an equity security holder in the chapter 11 cases had a claim against the Debtors distinct from their rights arising from the ownership of their equity interests was an equity security holder required to file a proof of claim.

Appellants' Claims are based solely on equity interests held by the Appellants in the Debtors. Each lists the Appellants' brokerage accounts as the sole basis for their Equity Claims. The proofs of claim for Claims 8 and 11 include an addendum purportedly showing the diminution in value of shares between the date purchased by each Appellant and July 30, 2023. (APP. 000004 and 000016). The proofs of claim for Claims 9 and 10 include an undated addendum purportedly showing a diminution in value of shares. (APP. 000008 and 000012). No other allegations or support was offered with the proofs of claim submitted to the Bankruptcy Court.

In both Appellants' Responses filed with the Bankruptcy Court and their appellate briefs, Appellants seek to import allegations of fraud into their proofs of claim in an attempt to recharacterize the nature of their claim. Specifically, although Appellants' proofs of claim each only included purported evidence of the diminution in value of their shares, the Appellants' Responses allude to "fraud" and "conspiracy" by and between the Debtors' former insiders and Foxconn that "kill[ed] the stock price." (*See* AA 83). Appellants appear to argue that any allegation of fraud or wrongdoing against the Debtors or all of their shareholders transforms the basis of any claim held by a particular shareholder. This is incorrect.

As an initial matter, neither the proofs of claim nor the Appellants' Responses plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, applicable to contested matters such as this by Federal Rules of Bankruptcy Procedure 9014(c) and 7009. *See, e.g., In re Nortel Networks, Inc.*, 469 B.R. 478, 498 (Bankr. D. Del. 2012) (where claims sound in

9

fraud, they must be stated with particularity); *see Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (to satisfy the Rule 9(b) standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."). There is no such precision or substantiation in the Appellants' Responses, let alone their proofs of claim, either with respect to the Debtors or to their executives.

More importantly, even if there were a claim for fraud that satisfied Rule 9(b), Appellants do not allege that they suffered any particularized harm, that they were fraudulently induced to retain their shares, or that they had any specific or individual communications with any of the alleged wrongdoers. Rather, the harm to them on account of the alleged fraud *is* the diminution in value of their shares: that is, the harm ***to the Debtors*** that caused the same damage to all of the Debtors' equity security holders. "It is well settled that an injury done to the stock and capital of a corporation by the negligence or malfeasance of its officers and directors is an injury done to the whole body of stockholders in common, not an injury for which a single stockholder can sue." *In re SemCrude L.P.*, 796 F.3d 310, 319 (3d Cir. 2015) (quoting *Stuart v. Robertson,* 118 Okla. 259, 248 P. 617, 619 (1926) and holding claims based on founder's self-dealing and other wrongdoing were company assets and therefore derivative). *See also, Artesanias Hacienda Real S.A. DE C.V. v. N. Mill Capital, LLC (In re Wilton Armetale, Inc.)*, 968 F.3d 273, 282 (3d Cir. 2020) (claims were derivative where defendants diverted assets from the company); *Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1177 (Del. Ch. 2006) (finding that "fraudulent retention" claims were derivative "because [shareholder claimants] failed to allege any distinct injury to themselves."). The fact that Appellants framed the harm as a direct fraud does not permit them to go forward on a claim that is, at its core, derivative. *See SemCrude*, 796 F.3d at 318. Accordingly, even if the Appellants' Claims could be read to include allegations of fraud, they were properly

10

disallowed as the Claims failed to even assert (let alone support) a harm to the Appellants that is distinct from the harm to all equity holders.

As noted, pursuant to the Plan, the Reorganized Debtors retained causes of action against the Debtors' former executives, including causes of action based on the allegations of fraud set forth in the Appellants' Responses, recoveries from which will flow to the Reorganized Debtors and, thus, inure to the benefit of all of the Reorganized Debtors' equity holders—including Appellants. (APP. 000272, 000287, 000313-000314). Disallowance of the Appellants' Claims will in no way prejudice the Appellants with respect to their rights to recover based on the alleged fraud: Appellants have retained all of their rights with respect to their equity ownership and their equity interests are provided for in the Plan (including the right to receive distributions, if any, on account of such interests), and the Reorganized Debtors retained (and are pursuing) causes of action based on the conduct alluded to in the Appellants' Responses.

### IV.   CONCLUSION

Appellants assert that they invested $1,090,406.56 of their retirement savings into 114,795 shares in the Debtors, the value of which has been reduced to approximately $11,000 and 7,653 shares. (*See* D.I. 8 at 8.) The Court is mindful of Appellants' losses and those of other equity holders. The Court further recognizes the challenges of *pro se* representation in the context of complex chapter 11 bankruptcy proceedings. That said, Appellants' losses, as reflected in their Claims, are not particular to them, but rather borne by all equity holders. Reversing the Order, and ordering the Reorganized "Debtors to put 1.1 million or so dollars back into our retirement accounts," as requested by Appellants, is at odds with the terms of the confirmed Plan as well as the priorities set forth in the Bankruptcy Code. As each of the Claims submitted by the Appellants is based solely on Appellants' ownership of equity securities in the Debtors, those Claims were

properly disallowed by the Bankruptcy Court.  For the reasons set forth herein, the Order is affirmed.  An appropriate order will be entered.